IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Benjamin Ford, | ) | |
| | ) | Civil Action No. 2:17-CV-0525-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Nancy A. Berryhill, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Benjamin Ford ("Ford"), brought this action pursuant to the Social Security

Act ("SSA"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner

of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB")

and for Supplemental Security Income ("SSI").  In accordance with 28 U.S.C. § 636(b)(1) and

Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial

handling.  Before this court is the magistrate judge's Report and Recommendation ("Report"),

recommending that the court affirm the Commissioner's decision. (ECF No. 18).[1]  In the Report,

the magistrate judge sets forth the relevant facts and legal standards, which are incorporated herein

by reference.  Ford filed objections to the Report (ECF No. 22), and the Commissioner filed a

response to those objections (ECF No. 25).  Accordingly, this matter is now ripe for review.

## I.  BACKGROUND

Ford applied for DIB and SSI on September 25, 2013, alleging disability beginning on

---

[1] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final
determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976).  The court
is charged with making a de novo determination of those portions of the Report to which specific objection is made.
The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or
recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

January 19, 2011.  (ECF No. 9-2 at 10).  Ford's application was denied initially and on reconsideration.  (ECF No. 18 at 1).[2]  On September 23, 2015, an Administrative Law Judge ("ALJ") heard testimony from Ford and a vocational expert.  *Id*. at 2.  The ALJ issued a decision denying Ford's claim.  *Id*.

In her decision, the ALJ found that Ford suffered from the following severe impairment: degenerative disk disease.  (ECF No. 9-2 at 13).  The ALJ found that, despite Ford's limitations, he is capable of performing past relevant work as a longshoreman in addition to other jobs that exist in significant numbers in the national economy.  *Id*. at 21-22.  Ford sought review of his case by the Appeals Council.  *Id*. at 6.  The Appeals Council denied Ford's request for review, making the ALJ's decision the final decision of the Commissioner.  *Id*. at 2-4.  The present action followed.

## II.  STANDARD OF REVIEW

The federal judiciary has a limited role in the administrative scheme established by the SSA.  Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance."  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).  Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]."  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency

---

[2] There have been no objections made regarding the procedural history as stated in the Report.

are to be mechanically accepted. The statutorily granted right of review contemplates more than

an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279

(4th Cir. 1969).  Rather, "the courts must not abdicate their responsibility to give careful scrutiny

to the whole record to assure that there is a sound foundation for the [Commissioner's] findings,

and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

### III. DISCUSSION

In his objections, Ford contends that the magistrate judge erred in recommending affirming

the ALJ's decision and failing to find that the ALJ (1) improperly evaluated the opinions of his

treating physicians Drs. Gregory Jones and William Wilson[3] and (2) inappropriately cherry-picked

evidence to support her conclusion.  (ECF No. 22).

"[T]he treating physician rule generally requires a court to accord greater weight to the

testimony of a treating physician."  *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per

curiam); *see also Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (stating that the treating

physician rule "requires that the opinion of a claimant's treating physician be given great weight

and may be disregarded only if there is persuasive contradictory evidence.").  "A treating

physician's opinion on the nature and severity of the claimed impairment is entitled to controlling

weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in the record."  *Mastro v. Apfel*, 270

F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R. § 416.927). "Thus, '[b]y negative implication, if a

physician's opinion is not supported by clinical evidence or if it is inconsistent with other

substantial evidence, it should be accorded significantly less weight.' " *Id.* (*citing Craig*, 76 F.3d

---

[3] In his brief, Ford alleged that the ALJ erred in her analysis of Drs. Steven Poletti and William Maguire's opinions, as well.  (ECF No. 14 at 16-18).  However, Ford raises objections relating only to Drs. Jones and Wilson's opinions. (ECF No. 22).

at 590).  "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Id.* (citing *Hunter*, 993 F.2d at 35).  The ALJ is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 255-56 (4th Cir. 2017).

## A. Dr. Jones' Opinion

Dr. Jones of Charleston Spine and Physical Medicine performed a one-time independent medical evaluation on Ford on March 6, 2013.  (ECF No. 9-7 at 96-101).  Dr. Jones provided a detailed report, which included notes regarding a physical examination, Ford's complaints, Ford's medical history, and his reviews of imaging.  *Id.*  In his report, Dr. Jones summarized his findings:

> Therefore, I can state from a neurologic stability standpoint and objective criteria alone, patient can return to unrestricted normal duties at any job that he wishes to participate in as of today's date 3/6/13.  However, taking into account patient's subjective pain complaints, I do not anticipate that patient will be able to return to gainful employment at any job similar to longshoreman in near future, as his subjective pain is severe, even though it far outweighs the likely source of his chronic pain.

*Id.* at 100.  The ALJ gave great weight to Dr. Jones' opinion that the claimant could be cleared for return to his regular duties without restrictions, noting specifically that "Dr. Jones reported that the claimant has been neurologically stable throughout his care and has shown no evidence of lumbar radiculopathy in either lower limb."  (ECF No. 9-2 at 19)  Additionally, he noted that Trey Ginn, a physical therapist that worked with Ford, reported in July 2011 and October 2011 that Ford was able to return to full duty work as a longshoreman.  *Id.*  The ALJ gave little weight to the portion of Dr. Jones' opinion that stated that Ford would be unable to return to work without experiencing flaring of his myofascial pain, and that he could not return to work as a longshoreman due to his subjective complaints of pain.  *Id.* at 20.  The ALJ specifically noted that Dr. Jones reported "that

the claimant's 'subjective' pain complaints far outweigh what could be expected from myofascial pain and/or facet-generated pain," and, "[i]f the Plaintiff's pain were as severe as alleged, it seems he would have continued to receive significant treatment after physical therapy, work hardening, and epidural injections in 2011." *Id.*

In his objections, Ford argues that the ALJ erred by improperly assessing the opinion of Dr. Jones by giving too little weight to the portion of Dr. Jones' report regarding Ford's subjective claims of pain. (ECF No. 22 at 3). He asserts that the ALJ provided no analysis as to why she discredited the subjective portion of the report rather than giving weight to the opinion in its entirety. *Id*. Further, Ford contends that the records from the South Eastern Spine Institute, beginning in August 2011, provide support for a source of Ford's subjective pain. *Id*. at 3-4.

However, as discussed above and in the magistrate judge's Report, the ALJ explained specific reasons for weighing part of Dr. Jones' opinion more heavily than the others. The ALJ found that Dr. Jones' opinion that Ford could return to his unrestricted normal duties was consistent with the record as a whole and that the portion of Dr. Jones' opinion based on the claimant's subjective complaints was not. (ECF No. 9-2 at 19); *see Kozel v. Astrue*, Civil No. JKS-10-2180, 2012 WL 2951554, at \*5 (D. Md. July 18, 2012) (citing 20 C.F.R. § 404.1527) ("When evaluating medical opinion evidence, the ALJ need not accept or reject an opinion in full. Rather, the ALJ should give weight to the medical opinion to the extent that it is supported by the evidence of record."); *see also Morris v. Barnhart*, 78 Fed. App'x 820, 824-25 (3d Cir. 2003) (noting that "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion," and finding that an ALJ "may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms

and limitations when the claimant's complaints are properly discounted."); *Cook v. Colvin,* No. 2:15-cv-07181, 2016 WL 5661348, at *5 (S.D.W. Va. Sept. 29, 2016).

The inquiry before the court is not whether the ALJ should have given greater weight to one portion of Dr. Jones' opinion, but rather whether the weight given to the opinion by the ALJ is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Craig*, 76 F.3d at 589 (stating that the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]"). The magistrate judge found that the ALJ properly gave specific weights to portions of Dr. Jones' opinion and gave specific reasons for those weights from the record. (ECF No. 18 at 10). The court agrees with the magistrate judge that the ALJ's treatment of Dr. Jones' opinion is supported by substantial evidence and finds that Ford's objection lacks merit.

### B. Dr. Wilson's Opinion

Dr. Wilson, an orthopedic doctor with Lowcountry Orthopedics, treated Ford for lower back pain in October 2013. In his several sentence opinion from an examination record dated October 29, 2013, he noted simply, "The patient will remain on the restriction and activity modifications we discussed. Should avoid strenuous work." (ECF No. 9-8 at 26). The ALJ stated that she gave Dr. Wilson's opinion little weight because "Dr. Wilson's assessment as to the claimant's limitation [was] not definitive." (ECF No. 9-2 at 20). The magistrate judge found that Dr. Wilson's opinion was not definitive of any limitations and the ALJ's analysis was consistent with the regulations. (ECF No. 18 at 12) (citing 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that

opinion.")).

In his objection, Ford renews his argument regarding Dr. Wilson's opinion and asserts that the magistrate judge erred by finding that the ALJ's decision to give little weight to Dr. Wilson's opinion was supported by substantial evidence. (ECF No. 22 at 4). He acknowledges that "strenuous" is a vague term but argues that the ALJ can and should be able to consider it in an RFC application. *Id*. at 4-5.

However, as the magistrate judge noted, Dr. Wilson's opinion did not give any specific limitations. *See, e.g., Page-Trapp v. Colvin*, No. CV-13-0366-FVS, 2015 WL 300259, at *10 (E.D. Wash. Jan. 22, 2015) (finding that the ALJ appropriately afforded a doctor's opinion little weight because "[the doctor] did not specify how much Plaintiff could lift, or define what 'strenuous' meant in the context of determining the appropriate RFC exertional level. Thus, the ALJ properly found that [the doctor's] recommendation that Plaintiff refrain from 'strenuous activities or lifting at this point until symptoms improve' was 'vague.' "). Like the magistrate judge, this court finds the cases cited again by Ford to be unpersuasive regarding the instant situation. (ECF No. 18 at 12). Further, contrary to Ford's argument, the word "strenuous" was not the only non-definitive aspect of Dr. Wilson's opinion. The magistrate judge found that in addition to being unspecific, "the opinion's value is hampered by its brevity." *Id.*; *see* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3), 416.927(c)(3). The ALJ discussed and considered Dr. Wilson's entire opinion in his report, (ECF No. 9-2 at 18), but decided in light of the record as a whole to give it little weight, *id.* at 20. The court agrees with the magistrate judge and finds that there is substantial evidence in the record to support the ALJ's decision to discount Dr. Wilson's opinion.

## C. Cherry Picking

Finally, Ford renews his argument that the ALJ cherry-picked facts by examining Ford's

good days and failing to look at the totality of the record to include Ford's bad days, as well. (ECF No. 22 at 5). He points out that Ford underwent three epidural shots during the time of his physical therapy; that surgery was discussed but not recommended; and that Dr. Isabella McCall, a consultant for the social security administration, recommend an RFC limited to light exertion. *Id.* at 5-6. Further, he argues that the ALJ erroneously found Ford's testimony not credible. *Id.*

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (internal quotations omitted). Where the record appears to contain conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence and to resolve the conflict. *Craig v. Chater*, 76 F.3d at 589; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

As the magistrate judge determined, the ALJ did not ignore conflicting evidence. Rather, the ALJ addressed each of the portions of the record that Ford argues she glossed over. (ECF No. 18 at 17). The ALJ noted that Ford progressed through physical therapy until he was cleared to return to work by his physical therapist and treating physician (ECF No. 9-2 at 15-17); specifically acknowledged that Ford had three injections in 2011 which provided some relief, *id.*; and considered that Ford was likely not a candidate for surgery, *id.* at 16-18. Furthermore, the ALJ discussed the treatments that Ford pursued, *id.*, and noted that after Ford refilled his pain medication there is no evidence that he required any further treatments, *id.* at 18. The ALJ appears to have analyzed, summarized, and weighed the entire contents of the record in order to determine the thoroughness and reliability of the expert opinions and the weight to be given to them, rather

than cherry-picking facts as Ford suggests.

Furthermore, the ALJ specifically addressed Dr. McCall's findings[4] and adopted her findings regarding Ford's sitting, standing, walking and postural limitations. *Id*. at 21. The ALJ did not adopt the remainder of Dr. McCall's assessment because she found it to be inconsistent with the evidence of record, including the assessments of treating physician Dr. Steven Poletti and Ford's physical therapist showing that Ford could lift 75 pounds or is restricted to no lifting greater than 50 pounds. *Id*. The ALJ explained that "the cumulative findings would not preclude the residual functional capacity for medium work." *Id*. Additionally, the ALJ provided an extended discussion regarding Ford's credibility and ultimately concluded that Ford's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. *Id*. at 15; *see Shivley v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) (A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility, and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions).

To support this assessment, the ALJ referenced, for example: (1) that although Ford testified that he could only stand and sit for 20 minutes at a time, he sat in the hearing for over 30 minutes; (2) that there are significant gaps in treatment from 2012 to present;[5] (3) that while Ford testified to pain ranging from six to ten[6] (depending on whether he takes hydrocodone) and testified that he must lie down for six to seven hours a day in an effort to relieve his pain, Ford's "failure to maintain routine follow-up care with his physicians [during the treatment gaps] suggests that his symptoms were not as severe and as limiting as the claimant has alleged." Moreover, the ALJ

---

[4] Dr. McCall found that Ford was not disabled and recommended limiting Ford to light work activity with specified limitations, as discussed above. (ECF No. 9-2 at 21).
[5] The ALJ further noted that it appeared that once Ford started narcotics and obtained disability benefits through work he had not had any further treatment other than several office visits with Dr. Maguire for refills.
[6] On a scale of one to ten.

noted that Ford testified that he did not return to the orthopedist due to money issues, but had also reported that he had health insurance. Additionally, although Ford testified to using a cane for assistance walking, he testified that his physicians did not prescribe a cane, nor did examinations through the record reveal any evident weakness or evidence of neurological deficit involving the bilateral lower extremities.[7] *Id*. at 15.

Accordingly, the ALJ did not cherry-pick facts and Ford's objection essentially invites the court to reweigh the evidence and come to its own conclusion. However, such reweighing of the evidence is not within the province of this court. *See Craig*, 76 F.3d at 589. The ALJ's assessment is supported by substantial evidence, and the court declines Ford's invitation to reweigh the evidence. Therefore, Ford's objection is overruled.

## IV. CONCLUSION

Having conducted the required de novo review of the issues to which Ford has objected, the court finds no basis for disturbing the Report. The court concurs with both the reasoning and the result reached by the Magistrate Judge in her Report, and finds that the ALJ's decision is supported by substantial evidence. Therefore, the court adopts the Report (ECF No. 18), and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
August 20, 2018

---

[7] The ALJ did not reject Ford's statements regarding the intensity or persistence of Ford's pain solely because the objective medical evidence does not substantiate his statements, as demonstrated above. *See Lewis*, 858 F.3d at 866.